# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDWARD B. BURGESS,

    Defendant.

Case No. 19-CR-42-JPS

**ORDER**

**1.    INTRODUCTION**

On February 26, 2019, Defendant was indicted on charges of arson and being a felon in possession of a firearm. (Docket #1). A superseding indictment was obtained months later, on May 14, 2019, adding two more charges: robbery, and brandishing a firearm during that robbery. (Docket #13). Defendant has entered into a plea agreement as to the first two charges. (Docket #62). He filed two motions to suppress evidence related to the second two charges. (Docket #33 and #35).

Magistrate Judge Nancy Joseph has filed a report and recommendation (the "Report"), recommending that this Court deny both motions. (Docket #52). Defendant has objected to the Report, (Docket #53), and the government has responded to the objection, (Docket #61). For the reasons explained below, the Court will overrule Defendant's objection, adopt the Report, and deny both of Defendant's motions.

**2.    RELEVANT FACTS**

Magistrate Judge Joseph held an evidentiary hearing on Defendant's motions to bring out all of the facts relevant thereto. (Docket #45). She also took extensive briefing from the parties. In her Report, the magistrate judge

carefully described all of the material facts. (Docket #52 at 2–14). For the most part, Defendant does not object to the Report's factual recitation. *See generally* (Docket #53). His only significant objection—the determination as to his own credibility—will be discussed separately. The Court will, therefore, adopt the facts as stated in the Report. Because they were concisely described in the Report, and in the interest of brevity, the Court will not repeat those facts here.

3. **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, the Court is obliged to analyze the recommendation *de novo*. 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Judge Joseph's findings and recommendations is not limited to her legal analysis alone; rather, the Court may also review her factual findings, and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

4. **ANALYSIS**

The Court agrees with Magistrate Judge Joseph's analysis in the Report, including her discussion of the relevant legal principles and precedent. (Docket #52 at 14–20). The disagreement between the parties, and between Defendant and the magistrate judge, lies in the application of those principles to this case's facts. Thus, in keeping with the theme of brevity, this Court will assume familiarity with the Report's analysis and conclusions. It will move directly to analyzing the three specific objections raised by Defendant to the Report.

The Fourth Amendment generally requires that law enforcement obtain a warrant prior to searching a place or arresting a person. The

warrant must be issued by a neutral magistrate upon probable cause, which is in turn usually founded on an affidavit from a police officer. Defendant's first two objections stem from the warrant affidavit used in his case. Specifically, he challenges whether the search warrant affidavit established a sufficient nexus between the armed robbery and 1) his sister's residence, and 2) the van parked outside it. The Court begins with the residence. The Court of Appeals recently summarized the relevant legal principles:

> In determining the sufficiency of a warrant affidavit, we focus on the totality of the information presented to the [magistrate]. We afford "great deference" to the probable cause finding made by the judge who evaluated the warrant application in the first instance and will uphold that determination so long as there is a "substantial basis" for concluding "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 . . . (1983). So, too, have we consistently held that "probable cause 'does not require direct evidence linking a crime to a particular place.'" *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018) (quoting *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006)). Rather, a warrant affidavit "need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *Id.* at 176 (quoting *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010)).

*United States v. Yarber*, 915 F.3d 1103, 1105 (7th Cir. 2019) (citation omitted).

The Court must keep in mind the lenient standard of review that colors its application of these legal precepts. While the Report itself is reviewed *de novo*, the Milwaukee County court commissioner's probable cause determination is not. As noted in *Yarber*, the Court must uphold that determination so long as there is a substantial basis for it. What is "substantial" is not subject to precise definition, but by operation of logic it

must be something less than one-hundred percent certainty. Thus, this Court need not be completely convinced that probable cause existed, only that there was a substantial likelihood that it did.

Layered upon this is the standard for probable cause itself. "[P]robable cause is far short of certainty—it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity,' [*Gates*, 462 U.S. at 244 n. 13], and not a probability that exceeds 50 percent ("more likely than not"), either." *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012). In sum, then, the Court is tasked with deciding whether there was substantial evidence to find that there was something less than a fifty percent probability that the residence contained evidence related to the robbery.

That exceedingly generous standard has easily been met here. Defendant was found at this residence a few days after having committed an armed robbery. He was observed taking out the trash at the residence, indicating that his connection to the place was more than that of a casual guest. When police moved in to arrest him, Defendant's girlfriend stated that Defendant had run to the back of the residence with a gun. This information provided an ample foundation upon which the court commissioner could find probable cause for a search.

Defendant insists that the warrant affidavit lacked vital information, including whether he lived at or owned the residence, and whether the gun referenced by his girlfriend was *the* gun used in the robbery. These details, while they would have been helpful, do not merit suppression of the evidence obtained in the subsequent search. Probable cause is not an onerous standard to meet, and this Court is not cast in the role reviewing the affidavit in the first instance. The court commissioner was provided

with specific facts that Defendant was present in the residence soon after his alleged crime, he had some comfort or familiarity with it, and he had a gun with him there. This was a substantial basis upon which to find probable cause.

Turning to the search of the van, this Court concurs with Magistrate Judge Joseph that the affidavit failed to establish probable cause. The affidavit simply mentions the van, without describing why Defendant would have access to it. (Docket #53-1 at 4). Also, the van is not linked to the crime in any way. *Id.* at 3–4. However, "the fruits of a search based on an invalid warrant may be admitted if the officers who executed the search relied upon the warrant in good faith." *Yarber*, 915 F.3d at 1106; *see United States v. Leon*, 468 U.S. 897, 913 (1984). "And an officer's decision to obtain a warrant creates a presumption that the officer acted in good faith." *Yarber*, 915 F.3d at 1106. Defendant can rebut this presumption by showing either that "(1) the magistrate 'wholly abandoned his judicial role,' or otherwise failed in his duty to 'perform his "neutral and detached" function and not serve merely as a rubber stamp for the police'; *Leon*, 468 U.S. at 923, 914, 104 S.Ct. 3405; or (2) the officer submitted an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002).

Defendant was required to present evidence to support either of these avenues for rebutting the presumption. *United States v. Wiley*, 475 F.3d 908, 917 (7th Cir. 2007). Though he gestures at both avenues, he presents no new evidence to support his position; Defendant merely emphasizes the lack of detail regarding the van. But *Leon*'s good-faith exception necessarily arises only when probable cause was found lacking, *United States v. Garey*,

329 F.3d 573, 577 (7th Cir. 2003), and so Defendant's observations add little to argue against the court commissioner's or the officer's good faith.

Rather, the Court concludes that the officers could reasonably rely on a judicial officer's probable cause finding. Again, the Court must stress the limited nature of its review, and indeed the court commissioner's own review. Probable cause is something less than fifty percent certainty, and the nexus required between the crime and the place to be searched is not great. *Id.* at 578 ("A search warrant may issue even in the absence of direct evidence linking criminal objects to a particular site taking into account the totality of the circumstances.") (citation omitted). Officers believed that the van was owned by Defendant's girlfriend, thereby allowing a reasonable inference that Defendant arrived at the house in the van, or that he at least had access to it. While this level of confidence is not sufficient to show probable cause for a search, it satisfies the Court that the officers acted in good faith.

Defendant's third objection is that probable cause did not exist for officers to believe that he was present in the residence on the day they entered it to arrest him. *United States v. Jackson*, 576 F.3d 465, 467–69 (7th Cir. 2009).[1] At the evidentiary hearing, Defendant testified that he never left

---

[1] *Jackson* quoted *Payton v. New York*, 445 U.S. 573, 602 (1980), which stated that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Jackson*, 576 F.3d at 467–68. The opinion went on to debate what a "reasonable belief" might be, whether the equivalent of probable cause, or some lesser standard. *Id.* at 468–69. *Jackson* leaned in favor of probable cause, but did not finally decide the matter, instead concluding that the officers had "easily" satisfied the more demanding probable cause standard. *Id.* at 469. This Court, like Magistrate Judge Joseph and *Jackson*, will hold the officers to that higher standard without deciding which should apply.

the residence that day. His uncorroborated testimony stands opposed by substantial evidence that he *was* observed outside the residence: Defendant's phone was "pinged" in the area of the residence, Defendant's girlfriend's van was outside the home, and Officer Lopez, working on the undercover surveillance operation, saw Defendant come out of the residence to take out some trash. The officer's testimony at the hearing was supported by an audio recording which demonstrated his honest, real-time reactions to seeing Defendant and reporting his movements.

This Court agrees with Magistrate Judge Joseph that Defendant's testimony is less credible than that of Officer Lopez. Defendant complains that the audio recording contains inconsistencies which undermine the officer's observations. The Court, like the government, disagrees. The recording is clear that the officers knew precisely where they were and who they were watching. In any event, it would be quite a fabrication for Officer Lopez, and all of the other officers involved, to contrive the audio recording out of whole cloth. Their motivation for deception is far less than that of Defendant, who stands to serve substantial prison time on the charges remaining for trial in this case. It is also noteworthy that at the evidentiary hearing, Defendant admitted to attempting to influence his girlfriend to give false testimony. Without Defendant's testimony, Officer Lopez's observations stand unrebutted. Those clearly supply an adequate foundation for the officers to believe that Defendant was inside the home.

Defendant also attempts to undermine Officer Lopez's observation of him taking out the trash. He contends that Officer Lopez did not bolster his observations by taking pictures of full trash cans. Defendant further notes that the house still had trash in it when the police entered, and that even if he had gone outside with trash, he would not have done so using

the door observed by Officer Lopez. While this minutia might be important if the officers were attempting to build a case of trespassing, they were not at the residence to collect evidence of that, or any, crime. Rather, they were tasked with locating Defendant and executing the arrest warrant. Officer Lopez did not, in short, have any reason to take a picture of garbage for posterity.

Defendant next argues that Officer Lopez did not see him re-enter the residence after taking out the trash, and so any reasonable belief in Defendant's presence therein must have evaporated. This position defies common sense; would someone taking out trash then run away from the home, on foot, through the back yard, when they harbored no suspicion that they were being watched? Further, although Officer Lopez could not actually see Defendant go back inside, none of the other officers who can be heard on the audio recording reported seeing Defendant flee the residence. Officer Lopez had every reason to believe that Defendant had gone back inside.

Defendant's fallback position is that even if Officer Lopez had probable cause to believe that Defendant was in the home, he failed to communicate that to the officers who actually executed the arrest warrant. This is belied by Officer Lopez's testimony at the hearing, wherein he explained that Officer Litwin, who participated in the surveillance operation and who can be heard on the audio recording, also joined in the arrest. Thus, the arresting officers carried full knowledge of the day's surveillance activities.

5. **CONCLUSION**

The Court is in agreement with and fully adopts Magistrate Judge Joseph's analysis in the Report. As explained above, Defendant's specific

objections to the Report supply no good reasons to quarrel with its findings. The Court will, therefore, adopt Magistrate Judge Joseph's recommendation in favor of denying Defendant's motions to suppress, (Docket #52), overrule Defendant's objection to that recommendation, (Docket #53), and deny the motions to suppress, (Docket #33 and #35).

Accordingly,

**IT IS ORDERED** that Magistrate Judge Nancy Joseph's August 12, 2019 Report and Recommendation (Docket #52) be and the same is hereby **ADOPTED**, and that Defendant's objection thereto (Docket #53) be and the same is hereby **OVERRULED**; and

**IT IS FURTHER ORDERED** that Defendant's motions to suppress (Docket #33 and #35) be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge